## Ex Parte Crenshaw.

1. **Contempt**: PUNISHMENT THEREFOR. Petitioner was found guilty by the circuit court of Jackson county, of contempt in willfully violating its restraining order, by removing and refusing to return certain fixtures in controversy in a pending civil suit, and was adjudged to pay the adversary party therein $150, as costs and expenses incurred by the latter in the contempt proceeding; also to pay a fine of $500, and that he restore the property mentioned in the order and be committed to jail until he paid said sums of money and returned the property, *Held*, that so much of the judgment of the court as related to the payment of the fine and the $150, was illegal and void.

2. **Orders of Court, Violation of**: IMPRISONMENT: CONSTITUTION. The court can imprison a person until he obeys its lawful order, which it is in his power to perform, but it cannot, in making the order of commitment for enforcing its order, impose a fine or imprisonment as a punishment for the contempt of the offending party in disobeying the same, nor can it adjudge the payment and imprisonment till paid of costs and expenses incurred in the contempt proceeding, in favor of the adversary party, as this would be in violation of article 2, section 16 of the constitution, prohibiting imprisonment for debt.

### *Habeas Corpus.*

WRIT DENIED.

*L. C. Slavens* for petitioner.

This was a proceeding for criminal contempt, based on Revised Statutes, sections 1055, 1056, and the court exceeded the limit of punishment in imposing a fine of $500. *Phillips v. Welch,* 11 Nev. 187; *Howard v. Durand,* 36 Ga. 346. The court exceeded its jurisdiction in committing petitioner until he paid $150 costs and expenses to the plaintiff; this was imprisonment for debt. 39 Mo. 286; 18 Mo. 484. The court having exceeded its jurisdiction, the statute authorizes the prisoner's discharge. R. S., §§ 2688, 2650.

*Wash Adams* also for petitioner.

The court exceeded its jurisdiction both as to the mat-

ter and sum, and the petitioner is entitled to be discharged under R. S., § 2650; Cons., art. 2, § 16; R. S., §§ 4041, 3118. The proceeding was for a criminal contempt founded on Revised Statutes, section 1055, and the punishment was for what petitioner had already done. 36 Ga. 358; 59 Cal. 408; 11 Nev. 187. The imprisonment of petitioner for the non-payment of the $150 to plaintiff Holmes, was imprisonment for debt. 39 Mo. 286; 18 Mo. 484; 65 N. C. 518, 637; 51. Vt. 630·; 14 Abb. Pr. Rep. 188; 6 Iowa 245; 44 Wis. 411; 11 Nev. 187; 59 Cal. 408; 35 Mich. 138; 7 Hill 301; 3 Lans. 413. The judgment cannot be valid in so far as it imprisoned petitioner for failue to restore the property, if invalid as to the $500 and the $150 to be paid to Holmes. *Ex parte Lange,* 18 Wall. 176; *Rex v. Collyer,* Sayer's Rep. 44; 1 Dallas 135; 49 Mo. 291; 7 Mo. App. 368; 6 Mo. App. 474; 60 N. Y. 559; 43 Mo. 502; *In re Henry,* 1 D. & L. 846; *Shank's case,* 15 Abb. Pr. (N. S.) 38; *Ex parte Bemert,* 7 Pac. C. L. J. 460.

*Gage, Ladd & Small, contra.*

The constitutional provisions relating to imprisonment for debt, apply to only *ex contractu* debts, not to debts arising from the commission of a tort in the nature of fines. *Blewett v. Smith,* 74 Mo. 405. There is no statute in this State limiting the common law discretion of a court of equity to punish parties for a violation of its lawful orders. R. S., §§ 1059, 2716; 2 High on Inj., § 1454, and note; *Rogers, etc., v. Rogers,* 38 Conn. 121; *Williams v. Lampkins,* 53 Ga. 200; *Theweatt v. Gammell,* 56 Ga. 98; *Byne v. Byne,* 54 Ga. 257; *Doubleday v. Sherman,* 8 Blatch. 94. The contempt being plainly charged in the commitment, the prisoner must be remanded. R. S., §§ 2648, 2651; *Ex parte Goodin,* 67 Mo. 637; *Ex parte Toney,* 11 Mo. 661; *State v. Gower,* 44 Mo. 181; *In re Harris,* 47 Mo. 164; *Ex parte Kauffman,* 73 Mo. 588; *Bank v. Kerchevel,* 65 Mo. 682. But even if all except one of the severable portions of the sen-

tence were absolutely void, the prisoner should be remanded until he performed the valid part. *People v. Baker*, 89 N. Y. 461; *People v. Jacobs*, 66 N. Y. 8; *Matter of Sweatman*, 1 Cow. 144; *Taff v. State*, 39 Conn. 82; *State v. James*, 37 Conn. 355; *Ex parte Lange*, 18 Wall. 163; *Houck v. Cross*, 67 Mo. 152; *Lenox v. Clarke*, 52 Mo. 115. On appeal in criminal cases, judgments are not regarded as entireties. *State v. Alexander*, 56 Mo. 131; *State v. Turner*, 63 Mo. 436; *State v. Kelso*, 76 Mo. 505.

HENRY, J.—It appears from the petition and copy of the record accompanying it, that the petitioner is imprisoned in the common jail of Jackson county by virtue of a judgment rendered by the circuit court of Jackson county, in certain proceedings against him, as for contempt of court, as petitioner avers, in an alleged violation of an *ex parte* order of injunction issued by that court. One James T. Holmes obtained a judgment of restitution against petitioner in a suit for unlawful detainer of the first floor of a builing in Kansas City, and certain fixtures therein. From that judgment petitioner appealed to the circuit court of Jackson county, and Holmes filed his petition for an injunction to restrain petitioner from removing any of said fixtures, and the court made an *ex parte* order to that effect. After service of the order, petitioner removed some of the articles embraced in the order, and thereupon an information was duly filed against him, charging him with contempt of court, and subsequently a temporary injunction was granted of the same purport as the *ex parte* order.

Upon the information petitioner was tried by the court, which found that he had violated said restraining order, and he was ordered to restore the property removed by the next morning. On the next day the court found that he had not complied with the restoring order, and found him guilty of contempt in willfully violating said restraining order, and adjudged that he pay said Holmes all his costs and expenses incurred in said proceedings, which the court found

to be $150; also a fine of $500; and that he restore the property mentioned in the order, and be committed to jail, there to be held by the keeper thereof until he shall have paid said sums of money and returned said property.

It is ably argued by counsel for petitioner that the proceeding against him was as for a criminal contempt under section 1055, Revised Statutes, which is as follows : "Every court of record shall have power to punish as for a criminal contempt, persons guilty of any of the following acts, and no others :  1st, Disorderly, contemptuous or insolent behavior committed during its sittings in immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority.  2nd, Any breach of the peace, noise or other disturbance directly tending to interrupt its proceedings.  3rd, Willful disobedience of any process or order lawfully issued or made by it.  4th, Resistance willfully offered by any person to the lawful order or process of the court.  5th, The contumacious and unlawful refusal of any person to be sworn as a witness, or when so sworn, the like refusal to answer any legal and proper interrogatories."

Section 1056 provides that " Punishment for contempt may be by fine or imprisonment in the jail of the county where the court may be sitting, or both, in the discretion of the court, but the fine in no case shall exceed the sum of $50, nor the imprisonment ten days, and where any person shall be committed to prison for the non-payment of any such fine, he shall be discharged at the expiration of thirty days."   Section 1059 declares that "Nothing contained in the preceding section shall be construed to extend to any proceedings against parties or officers as for contempt for the purpose of enforcing any civil right or remedy."

The effect of this section is to leave the punishment for contempt in cases other than those embraced in section 1055, as at common law.  The power to commit as for contempt any officer or party in a proceeding for the purpose of enforcing a civil right or remedy, relates only to such

conduct as tends to defeat or impair the right or remedy of a party. It must be for a disobedience of some order or process made or issued, in order to preserve such right as the parties, or adverse party, may establish to the property in controversy., If not of this character, the conduct alleged to be in contempt of court must fall under one of the subdivisions of section 1055, or is not contempt at all.

The restraining order in this case was made for the purpose of preventing the removal of the property in litigation, to which both Holmes and the petitioner severally laid claim. Its object was to preserve the property, and keep it within the jurisdiction of the court, so that in the event that Holmes succeeded in the pending litigation, it could be reached by the process of the court. Its violation tended to defeat such right as Holmes might establish in the property and prevent the seizure of the same in his behalf by the sheriff, under such process as might be issued on the final determination of the case. Such orders are not adjudications upon the right of property, but are only made with reference to ultimate results, and virtually place the property *in custodia legis* until those ultimate results are reached. The proceeding against the petitioner, therefore, was not as for a criminal contempt, in the sense of section 1055. It was instituted by Holmes for himself, and not for the State. We have not overlooked the case of *Howard v. Durand*, 36 Ga. 346, in which the defendant was enjoined from selling or disposing of property in litigation, and violated the injunction, and in which the supreme court of that state said: "Suppose the court had committed the defendant for said contempt, would that afford any remedy to Howard? Would it restore the property sold? Do not the facts show that the only effect of the punishment would be to vindicate the authority of the court, and not to furnish any remedy for plaintiff." There is this marked difference between that and this case, in that there the party in contempt had put it out of his power to restore the property, and his imprisonment could only have been, as the

court observed, to vindicate the authority of the court. Here, however, it does not appear that the petitioner could not restore the removed property, and his imprisonment served the double purpose of vindicating the authority of the court and compelling a compliance with its order, which it might be assumed the petitioner has the power to do, as he has not alleged the contrary.

These two cases aptly mark the boundary line between the two classes of contempt recognized by our statutes. Where there has been such a violation of an order of court as puts it out of the power of the guilty party to comply with it, his punishment must be as for a criminal contempt, because it can be only punitive. But where what is enjoined can be done by the party, his disobedience subjects him to imprisonment, not as for contempt, but as a means of securing compliance with an order of court.

We have not overlooked the third subdivision of section 1055, which declares "a willful disobedience of any process or order lawfully made by the court," a criminal contempt. Conceding that the broadest meaning of that language is to be accepted as that in which the legislature intended it to be received, does it render section 1059 wholly inoperative ? Certainly not. There is still left to the court the power to imprison a party indefinitely until he shall have complied with a lawful order made by it.

A sheriff, or other officer of the court, for refusing to obey any lawful order, or to execute any lawful process, may be fined or imprisoned, or both, beyond the limits prescribed by section 1056. It could not have been the purpose to take from the court the power to enforce its lawful order by imprisonment of a party refusing to obey, who had it in his power to comply with it, or to limit such imprisonment to ten days and a fine of $50; for there are many cases in which a party would cheerfully pay such fine and suffer such imprisonment rather than do the thing commanded.

Such a construction of those sections would utterly

destroy the efficiency of the equity jurisdiction of the court. The order or decree of a chancellor would be a mere will-with-the-wisp—a *brutem fulmen*, to frighten only those ignorant of its inherent weakness. "Laws without a competent authority to secure their administration from disobedience and contempt, would be vain, nugatory. A power, therefore, in the supreme court of justice to suppress such contempt by an immediate attachment of the offender, results from the first principles of judicial establishments, and must be an inseparable attendant upon every superior tribunal. Accordingly, we find it exercised as early as the annals of our law extend." 4 Black. Com., 286; *State v. Matthews*, 37 N. H. 451; *Watson v. Williams*, 36 Miss. 331; Hurd on Habeas Corpus, 7.

It is not to be supposed, and nothing in the several sections of the statute on the subject warrants the inference that the legislature intended to destroy this inherent power of the court, and the reasonable construction of those provisions is, that the intent was to limit the power of the court as to the extent of the punishment for criminal contempt, as defined in section 1055, leaving the law on the subject, in other respects, as at common law. The order to restore the goods was a lawful order. A willful disobedience of that order was a criminal contempt, which subjected the petitioner to punishment under section 1055, in a proceeding against him as for a criminal contempt.

The order committing him to a common jail until he should have restored the goods in compliance with the order, was not a punishment for contempt, but a lawful means used by the court to enforce a compliance with its order. When imprisonment is designed as a punishment, and not as a means of compelling observance, it must be for a definite term. *Rex v. James*, 5 B. & Ald. 894; *Birkley v. Com.*, 2 J. J. Marsh. 575; *Com. v. Roberts*, 2 Clark (Pa.) 349. No statute has prescribed a limit for imprisonment imposed for the purpose of enforcing obedience to its lawful order. Why should there be a limit to the impris-

onment when the order is a lawful order, commanding the party to do what is in his power to perform? Not that a court may imprison him for ten days, or two months, or for any longer or shorter period for the pupose of securing a compliance with its order, but that it may commit him to prison to be held there until he shall have obeyed the order.

The prisoner has no occasion in such a case to apply to the courts for his discharge. He has it in his power to obtain it by doing what he should and has the power to do. If he should be released he would still be in contempt of court, and continue in contempt until his compliance with the order. Imprisonment for contempt of court, in violating its order, and not to enforce a compliance with any order, but only to vindicate the authority of the courts, stands upon a different ground, and is regulated by sections 1055 and 1056.

Section 3118 of the Revised Statutes, limiting all punishments by virtue of the common law to a fine of $100 and imprisonment for two months, has application only to crimes and misdemeanors, besides, as above stated, the imprisonment for the purpose of enforcing an order, is not imprisonment as a means of punishment.

In this case an *ex parte* injunction order was made, which was disobeyed. The next day an order was duly made, commanding the petitioner to restore the goods, which was likewise disobeyed; and in its order or judgment the court blends together the prisoner's contempt, both in refusing to obey the *ex parte* injunction order against removing the goods, and his contempt in disobeying the order subsequently made to restore them, and imposes a fine of $500 upon him, and commits him to prison, to be held there until he should pay the fine and restore the goods.

The petitioner was guilty of two distinct criminal contempts in the disobedience of the several orders, and might have been proceeded against as for criminal contempt in both cases, but the court has no right in making the order

of commitment for the purpose of enforcing its order of restoration to impose a fine or imprisonment, for the contempt of which the prisoner was guilty in the disobedience of either of the said orders. *In re Pierce*, 44 Wis. 422. For the purpose of enforcing the order to restore the goods, the court properly committed the petitioner, but for what was the $500 fine imposed? Manifestly for the contempt in disobeying the order, not to secure a return of the goods, because the petitioner was to be confined in jail until he paid the fine and restored the goods. If he should return the goods he must still be held in jail until he paid the fine.

The fine imposed could not, and could not have been designed to, promote the interest of the adverse party in the matter of his right or remedy. *Howard v. Durand*, 36 Ga. 346; *People v. Spalding*, 10 Paige 284; 7 Hill 301; and no fine for a criminal contempt can exceed $50. The fine not only exceeded the amount which the court was authorized to impose, but was imposed in a proceeding not instituted to punish for criminal contempt, and was included in a commitment of the petitioner to jail to enforce his compliance with an order of the court. It was injecting criminal punishment into an order made to secure and enforce civil rights. But the court not only imposed the fine of $500, but.also adjudged that the petitioner pay Holmes $150, his costs and expenses, and that he stand committed until he restored the property and paid the fine and judgment for costs. Section 16, article 2 of our constitution, declares: " That imprisonment for debt shall not be allowed, except for the non-payment of fines and penalties prescribed by law." It was held *In the matter of Watson*, 3 Lans. 413 ; *People v. Spalding*, 10 Paige 284; *s. c.*, 7 Hill 301, that : " When a defendant is ordered to pay a sum of money it becomes a debt, and the precept to commit him is in the nature of a *capias ad satisfaciendum*, and he may be discharged under the insolvent laws," but otherwise where a

fine is imposed for a willful contempt in violating an injunction, or for other criminal conduct of like nature.

*In the Matter of John C. Rhodes*, 65 N. C. 518, the court said: "We know of no law by which a judge can direct a fine for contempt of his court, to be paid to a party to the suit."

The money which the petitioner was ordered to pay Holmes, was an adjudication that costs and expenses incurred by Holmes in the proceeding, should be paid to him by the petitioner. It was a judgment, and whether valid or invalid, is not a matter of any consequence, for, if a valid judgment, it is a debt of record for which the prisoner cannot be imprisoned, and, if invalid, the imprisonment on that account is illegal.

In *Coughlin v. Ehlert*, 39 Mo. 285, it was held that since the abolition of imprisonment for debt in this State, "a party cannot be imprisoned for contempt of court for refusing to obey an order or decree directing the mere payment of money." See also *Roberts v. Stoner*, 18 Mo. 484.

*In re Blair*, 4 Wis. 522, it was held that the constitutional provisions against imprisonment for debt, must have the effect of rendering void any order or judgment ordering imprisonment for debt.

Notwithstanding these errors in the proceeding of the court, we cannot discharge the prisoner, since the order for his commitment, until he shall have obeyed the order to restore the goods, was a legitimate exercise of the power of the court. Neither this nor any other court can, on a petition for a habeas corpus, discharge the prisoner for a mere irregularity in the proceedings. It must be for an illegality which renders the commitment void. Hurd on Habeas Corpus, 327. Here the court had jurisdiction, and the imprisonment of the petitioner until he should comply with the order of the court, was warranted by law. After he shall have restored the goods the prisoner will be entitled to his discharge, the other requirements of the judgment

being nullities. *Feeley's case*, 12 Cush. 598; *People v. Markham*, 7 Cal. 208.

The prayer of the petitioner, that he be discharged, is refused. All concur, except SHERWOOD, J., who concurs in the construction of the several sections of the statutes, but holds that section 1056, limiting the power of the court in the punishment of criminal contempt, to be unconstitutional, as an invasion by the legislature of the domain of the judiciary.