JACOB MILLER AND JACOB DIEHL v. TOLEDO GRAIN AND MILLING CO.

**1. INJUNCTION ENFORCED AGAINST PERSONS NOT PARTIES TO THE SUIT.**

A person having actual notice of an injunction is amenable thereto, although not a party to the suit in which it was issued. Therefore, where an injunction was granted restraining a manufacturer of flour from dressing and labelling his goods by certain ornamental designs and labels in imitation or similar to certain others, it is a violation thereof for persons who were agents of such manufacturer and had knowledge of the injunction, to sell flour upon their own responsibility under a design made by themselves which violates such injunction; and they are liable in contempt without an original proceeding for an injunction.

**2. SECTION 5581, REV. STAT., IS PENAL—CONSTRUED STRICTLY.**

Section 5581, Rev. Stat., providing for the enforcement of injunctions, and imposing a fine for its violation payable to the county, and imprisonment until the fine is paid, is penal in its nature and should be construed strictly, against the party bringing the proceeding to enforce it.

**3. IMPRISONMENT FOR FAILURE TO PAY COSTS ILLEGAL.**

A court has power, under Sec. 5581, Rev. Stat., providing for the enforcement of injunctions, to impose imprisonment for failure to pay a fine, adjudged in a proceeding in contempt, but a judgment imposing imprisonment until both fine *and* costs are paid is illegal, inasmuch as the order to pay costs amounts simply to a judgment for money and the constitution provides that there shall be no imprisonment for debt in civil actions, except for fraud.

**4. JUDGMENT MODIFIED AND REVERSED—COSTS.**

A judgment in a proceeding in contempt imposing fine and costs and imprisonment until both are paid will, on error, be modified so as to provide for the imprisonment for the non-payment of the fine and reversed as to the costs, and requiring the costs on the error proceeding to be paid one-half by each party.

HEARD ON ERROR.

*T. N. Bierly,* for plaintiff in error.

*G. Harmon* and *Almon Hall,* for defendant in error.

HAYNES, J.

In this case a petition in error is filed to reverse the action of the court of common pleas in assessing against Miller and Diehl a fine and costs, and in ordering their imprisonment until the fine and costs were paid, in a proceeding in contempt, for the violation of an injunction which had been granted before that time in the case of the Toledo Milling and Grain Co., against Louis M. Friedman, restraining Friedman from using a certain device or design on certain flour bags, indicating that the grade or class of flour was what was called, commonly, "Pansy."

In the original case against Friedman, Miller and Diehl were not parties. They had been selling flour as agents of Friedman, were in court, and testified in the case, and knew of the decree that was rendered, but after the decree was rendered, they ceased to be the agents of Friedman, and then took up the business of selling flour under a design made by themselves, which is the design that is complained of as an infringement or imitation of that of plaintiff below, and in violation of its rights under the injunction.

The proceedings were heard upon evidence, and the opinion of the court, delivered by Judge Pratt, is here given in full, in which he sustains the proceeding. Judge Pratt closes his opinion by saying:

"I have had in my practice several cases of this kind—one before Justice Swayne, when he was sitting in the federal court here, and one at Cleveland, in which one of the most prominent attorneys in the city was engaged; and, after holding that the act done was in violation of the injunction, he continued the matter for two weeks, saying that there would probably be no further necessity for any action on his part; and there was not. The same order was once made in a case in the circuit court here, by Judge Scott, at Chambers.

"I would punish parties for contempt by imprisonment, however, if that were deemed necessary. But this is the first time this matter has been brought to the attention of the court, and the fact being, so far as this court is concerned, determined that the injunction has been violated, the violation of the injunction should cease at least until there has been an opportunity to rehear this case on petition in error, and it can be heard, of course, in circuit court. If there should be a continued violation of the order notwithstanding this finding, then some other judge would have to pass upon the question when it is made; but at present the order of the court is that the defendants be fined in the sum of $25 each, and the costs of this proceeding."

This decision was made on February 8, 1900. An entry was made on the journal of the court upon that, and an order was issued, on February 16, eight days afterwards; but it appears that, notwithstanding the court said he was not going to commit the accused to imprisonment, the entry upon the journal was as follows:

"It is therefore ordered and adjudged, that said Jacob Miller and Jacob Diehl, and each of them, pay a fine of twenty-five dollars and the costs of this proceeding, and that each of them stand committed to im-

Miller and Diehl v. Milling Co.

prisonment in the county jail of Lucas county, Ohio, until said fines and costs are paid, or until they be otherwise discharged, and that execution issue to enforce the foregoing order and judgment. To all of said finding, orders, and judgment both Miller and Diehl except."

This is a transcript of the journal entry, and is the same as a copy of the final judgment.

In relation to the facts of the case, we are clearly of the opinion that the court of common pleas was right in finding that the design that was used by these parties for the bags of flour which they sold was in violation of this injunction. It seemed to us very marked and very clear in that respect; so that upon the facts we find that the court of common pleas was correct in its finding.

Two questions have been made which are of some importance. They are these:

First, whether these parties are so far parties to the original suit of the Toledo Grain and Milling Company, against Friedman that an attachment for contempt can issue against them, without first instituting an original proceeding for an injunction, and after that an attachment for a violation of it, if they should violate it.

The second question is, whether the imprisonment clause is illegal.

It is claimed on behalf of the plaintiffs in error that it was an abuse of the discretion of the court. It will be observed that this original injunction is against Friedman and his agents, and it was admitted here and stated in the evidence, that Miller and Diehl were agents of Friedman, selling his flour, at the time that the mark upon it was enjoined, and continued to be used until after the judgment of the court in that case; that immediately thereafter they started out independently to sell flour, and undertook to make a design that should just avoid being a violation of the one in use by the defendants in error.

We think the court was correct in holding that these proceedings could be maintained against these parties, although they were not technically parties to the original suit. The law in regard to injunctions is pretty liberal in that respect. The statute itself (Sec. 5579) provides that "An injunction shall bind the party from the time he has notice thereof, and the undertaking required by the applicant therefor is executed." We have had a case in this court since I sat on the bench in which it was held that where a party had notice that an injunction was applied for and being issued, but was not served for some time, yet he was liable for a violation of that injunction at any time after he had notice that an injunction was being issued against him. The law as laid down by the Supreme Court of the United States, is found in Ex parte Lennon, 10 O. F. D., 456. The court, Mr. Justice Brown delivering the opinion, say:

"The facts that petitioner was not a party to such suit, nor served with process of subpoena, nor had notice of the application made by the complainant for the mandatory injunction, nor was served by the officers of the court with such injunction, are immaterial, so long as it was made to appear that he had notice of the issuing of an injunction by the court. To render a person amenable to an injunction it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice. High on Injunctions, Sec. 1444; Mead v. Norris, 21 Wis., 310; Wellesley v. Mornigton, 11 Beav., 181."

We think, therefore, that the court of common pleas had authority to pass judgment on these parties, the facts warranting it.

Now in regard to the punishment. While this is a proceeding for contempt, it is governed by Sec. 5581 of the code:

"An injunction or restraining order granted by a judge may be enforced as the act of the court, and disobedience thereof may be punished by the court, or any judge who might have granted it in vacation, as a contempt; an attachment may be issued by the court or judge, upon being satisfied, by affidavit, of the breach of the injunction or restraining order, against the party guilty of the same; and such party may be required by the court or judge to pay a fine not exceeding $200, for the use of the county, to make immediate restitution to the party injured, and to give further security to obey the injunction or restraining order, and, in default thereof, he may be committed to close custody until he complies with such requirement, or is otherwise legally discharged."

He may be required to pay a fine not exceeding $200, and in default of such payment may be committed to close custody until he complies with such requirement. We have no question but that the court might impose the fine that it did impose, to-wit: a fine of $25.00 against these parties. The only question is whether he had a right to impose a fine and costs both. We do not think there was any abuse of discretion in imposing a fine of $25.00. We think the facts of the case fully warranted the court in making that order; but in regard to the costs of the case we do not agree with the court, that it had a right to impose imprisonment in default of payment of costs. I read from the first case cited by counsel for the plaintiffs in error, from the fifth circuit, Hamilton county, which was an alimony case—Lubbering v. State, 10 Circ. Dec., 508.

"A court has the power to imprison one who has been ordered to pay alimony in an amount which he could pay, but which he refuses to pay; but where there is added to the amount of alimony a fine and costs of the contempt proceeding, and the defendant is committed until the whole sum is paid, the order of imprisonment is invalid.

"'A sum ordered to be paid as fine and costs in a contempt proceeding amounts simply to a judgment for money, and the court has no power to imprison as for contempt on failure to pay it.

"Alimony is something more than a debt, and imprisonment for failure to perform is not against the provisions of our constitution or our statutes."

In that case Lubbering was ordered to pay $1.50 per week, and the arrears amounted to $4.50 at the time they were proceeding in the case, and he had also refused to pay an attorney fee of $15.00, to plaintiff's attorney. The court of common pleas took the matter in hand, and ordered that the amount be paid, and in addition to that sum of $25.00 to be applied in payment of the expenses of the contempt proceedings, and also the costs of the contempt proceedings, amounting to $16.41, and in default thereof ordered him committed to the county jail, to be confined until said sums of money were paid. The court say:

"We think the judgment of the court should be set aside. The court had no power to order the accused to be confined in the jail until the fine and costs were paid.

"Section 5645, Rev. Stat., provides: And if it be adjudged that he is guilty he may be fined not exceeding $100, or imprisoned not more than ten days, or both."

Miller and Diehl v. Milling Co.

"And Sec. 5646, Rev. Stat., provides: When the contempt consists in the omission to do an act which is yet in the power of the accused to perform, he may be imprisoned until he performs it.

"The only contempt charged against Lubbering, which the court found him guilty of, was in not paying the $4.50 alimony to the wife, and if Lubbering had been ordered imprisoned until he paid this amount, we would hold the judgment valid, for we are of the opinion that the evidence shows he could have paid this amount; but what the court did was to order him committed until he paid $25.00 in the nature of a fine and the costs of the proceedings in contempt. The fine and costs were simply a judgment for money, and there was no power in the court to imprison as for a contempt on the failure to pay it.

"The power to imprison as for a contempt on failure to pay alimony we think rests on different grounds. Alimony is something more than a debt, and the best interests of society require that decrees of this nature should have all the power that courts can give for their enforcement. It is a protection to the family and the marriage relation which is the foundation of our society. We adhere to the ruling made by this court in Effinger v. State of Ohio, 5 Circ. Dec., 408."

We had this question before us in Pancost v. State, 8 Circ. Dec., 546, three years ago this term. And in that case, which was an alimony case, there had been an order that a certain amount of alimony should be paid, including the sum of $25.00 to the attorneys. He was ordered to be imprisoned until he paid the amount of alimony, attorney's fees, and costs.

The court held:

"Plaintiff in error was imprisoned for contempt in refusing to obey an order granted in a divorce case to pay certain sums to the divorced wife for the support of minor children.

"Held: Under the evidence, it was not within the power of the plaintiff in error to perform the order of the court within the meaning of Sec. 5646, Rev. Stat.

We say here:

"In regard to the attorneys' fees we are unable to find any authority for the court directing their payment. But whether the court was authorized to do that or not, we are clearly of the opinion that he had no authority to order this man to be imprisoned at that time for the paymen of those attorneys fees, nor for the payment of the costs made in the contempt proceedings. In support of that we cite a case from 80 Mo., 447. I read from the syllabus:

"Petitioner was found guilty by the circuit court of Jackson county, of contempt in wilfully violating its restraining order, by removing and refusing to return certain fixtures in controversy in a pending civil suit, and was adjudged to pay the adversary party therein $150, as costs and expenses incurred by the latter in the contempt proceedings; also to pay a fine of $500, and that he restore the property mentioned in the order and be committed to jail until he paid said sums of money and returned the property. Held, that so much of the judgment of the court as related to the payment of the fine and the $150 was illegal and void.

"The case is a lengthy one, and discusses many questions under their statutes; but where they hold that he might be imprisoned for not returning the property, they say:

"Here the court had jurisdiction, and the imprisonment of the petitioner until he should comply with the order of the court, was warranted by law. After he shall have restored the goods the prisoner will be entitled to his discharge, the other requirements of the judgment being nullities. * * *

"For these reasons the judgment of the court will be reversed, and the defendant be discharged, and the case be remanded to the court of common pleas."

There is quite a long discussion in that case in Missouri of the law in regard to the matter, and the distinctions that are made between the cases that are in the nature of criminal and those that are really civil.

There is a cause, which I will not attempt to read from, Second Nat'l Bank v. Becker, 62 Ohio St., 289, in which the Supreme Court make a distinction in regard to matters that are civil, and hold that there should be a construction of the statute such as would not permit the imprisonment of a party in a matter purely civil, and only civil, for the reason that the constitution provides that there shall be no imprisonment for debt in civil actions, except in case of fraud. In criminal causes the rule, of course, is different, and parties are fined, and imprisoned until they pay the costs. This statute provides that a party may be fined a certain sum for the use of the county, not for the party. That certainly is a matter penal in its nature: but we think the statute should be construed strictly as against the rights of the party who is bringing the proceeding for the purpose of enforcing a fine and imprisonment; and while the statute provides that he may be imprisoned for the non-payment of the fine, there is no provision in regard to the non-payment of the costs.

The judgment of the court will therefore be modified so as to provide for the imprisonment for the non-payment of the fine, but not for the costs. As to the matter of costs, it will be reversed. The costs will be divided under the statute, payable one-half by each party.