## DORAN *vs.* DEMPSEY.

### *In the matter of the Estate of* EDWARD DORAN.

THE Surrogate has power to enforce all lawful orders, process, and decrees by attachment.

The proceedings on such attachments are regulated generally by the statutory provisions applicable to such process when issued by Courts of Record.

The Ecclesiastical Courts never had any authority to commit for contempt, except through the intervention of the Court of Chancery.

When a decree has been made by the Surrogate, directing the payment of money by an executor or administrator, and the party in interest, on a certificate of the decree docketed with the County Clerk, having issued an execution which has been returned unsatisfied, then applies to the Surrogate for an attachment, and the executor or administrator on the return of the order to show cause, sets up his inability to pay,—unless it appear that the debt was fraudulently contracted, or that the party against whom the decree was made, wilfully retains possession of funds or assets still in his hands, or refuses to pay when he has the means of doing so, the attachment will not be issued.

If inability to pay be alleged as the ground of non-compliance with the decree, the executor or administrator should submit to an examination as to his property, and consent to the application of his choses in action to the payment of the decree, as conditions or terms of relief.

FRANCIS B. EARLE, *for Petitioner;*
A. B. MILLARD, *for Executor.*

THE SURROGATE. A decree was made against the executor on the settlement of his account, directing the payment of a certain sum to one of the legatees under the testator's will. Having obtained a certificate of the decree in the form prescribed by the statute (2 *R. S.*, 3*d ed.*, *p.* 320, § 12), the legatee caused the same to be filed with the County Clerk, and execution to be issued thereon against the executor. The execution was returned unsatisfied, and the claimant now applies for an attachment against the executor, for not complying with the requisitions of the decree.

The Surrogate has power " to enforce all lawful orders, process, and decrees of his Court, by attachment against the persons of those who shall neglect or refuse to comply with such orders and decrees, or to execute such process; which attachments shall be in form similar to that used by the Court of Chancery in analogous cases." (2 *R. S.*, 3*d ed.*, *p.* 319, § 6, *sub.*, 4.) By Section 22, 2 *R. S.*, 3*d ed.*, *p.* 322, the provisions of Sections 10, 12, 13, 16 to 32, inclusive, of title thirteenth, chapter eighth, of the third part of the Revised Statutes, are made applicable to attachments issued by Surrogates, thus assimilating the rules relating to such process, to those governing Courts of Record on proceedings as for contempts, to enforce civil remedies, and protect the rights of parties in civil actions.

The Ecclesiastical Courts, not being Courts of Record, never had any authority to commit for contempt, except through the medium of the Court of Chancery, on a certificate by the Bishop (*Hamerton* vs. *Hamerton*, 1 *Hagg.*,

24, *note ;* 2 *Burns, E. L.,* 243, *f.*), upon which a writ, termed a *significavit,* issued from that Court. The ancient mode of enforcing decrees in this way, by excommunication, was subsequently changed to a proceeding for contempt on a similar certificate to Chancery.

The Colonial Governors as Judges of the Prerogative Court, probably enforced their decrees in the same mode. After the Revolution, the Court of Probates, and the Surrogates, though authorized to proceed according to the course of the Ecclesiastical Courts, were restricted in the matter of ecclesiastical pains and penalties (1 *Greenleaf,* 368, § 20) ; but authority was given to them directly, to decree and "*compel* payment" of legacies and distributive shares, by process directing the party in default to be taken and imprisoned, till performance of the decree. (1 *K. & R.,* 321, § 11 ; 1 *Greenleaf,* 367, § 13 ; 1 *R. L., p.* 448.) The provisions of the Revised Statutes are in harmony with those previously existing; and there thus appears to be an unbroken chain of custom and statute for the authority of the Court acting in testamentary matters, to enforce its decrees by process of imprisonment.

The contempt alleged in this case is not actual disrespect shown to the Court, but consists in the neglect or refusal to make the payment required by the decree to be made to the legatee, and the proceeding is, therefore, as for a contempt, in order to enforce a civil remedy. (1 *Add.,* 304.) In *Hosack* vs. *Rogers,* 11 *Paige,* 603, the Chancellor decided that since the passage of the act to abolish imprisonment for debt, a final decree against an executor for the payment of a debt due from the testator, cannot be enforced by attachment, unless the executor has funds in his hands applicable to the payment of the decree. The provisions of the act to abolish imprisonment for debt do not extend to proceedings as for contempts to enforce civil remedies ; and they relate only to civil process or executions issuing out of Courts of Law or Equity ; and they

are not therefore applicable to proceedings in the Surrogate's Court.

It is proper, however, to bear in mind that the Surrogate possesses no power to enforce his decrees, except by attachment, and that was the only direct remedy under the control of parties in interest, until the enactment of Sections 63 & 64, of the act of 1837, " concerning the proof of wills," &c. (*Laws*, 1837, *p.* 535), by which it was provided that after any decree made by the Surrogate for the payment of money by an executor, administrator, or guardian, he shall, on application, make a certificate of the decree, the names of the parties and the amount, on filing and docketing which with the Clerk of the Supreme Court, execution should issue thereon in the same manner as on a judgment obtained in that Court.     Section 2 of chap. 104, of the Laws of 1844, amended the act of 1837, so as to provide for the filing and docketing of the certificate with the County Clerk, instead of the Clerk of the Supreme Court, and the issuing of an execution thereon, as on a judgment recovered in the Court of Common Pleas.

The remedy given by the statute for the collection of the amount directed to be paid by a Surrogate's decree, does not therefore solely depend upon the process of attachment. And it seems to me entirely in opposition to the spirit and scope of the recent legislation on the subject of civil remedies against debtors, to have recourse to the power of this Court to imprison a party for not complying with the requisitions of a decree directing a money payment, unless the debt has been fraudulently contracted, or the party against whom the decree was made wilfully retains possession of funds or assets still in his hands, or refuses to pay when he has the means of doing so. The commitment is one which places the party in close imprisonment, and I have certainly no inclination to execute the law in that way, against a person who does not comply with a decree because he *cannot* comply with it. Nor do I see that justice or official duty requires me to exercise

that power in a case of sheer inability to pay. In *Fitz-gerald* vs. *Fitzgerald*, 2 *Lee*, 263, where non-obedience to a decree for costs and alimony arose from inability to pay them, the Court allowed the decree to remain in suspense until the party should be able to pay them, and permitted him to bring in an allegation in defence of his disobedience. The 20*th Section of Tit.* 13, *c.* 8, *Pt.* 3, of the Revised Statutes, as amended by chap. 9, of the Laws of 1843, authorizes the Court or tribunal ordering such imprisonment, in their discretion to relieve the person imprisoned in such manner, and upon such terms, as shall be deemed just and proper.

Where the party complaining of disobedience to an order directing the payment of money, has exhausted his remedy by execution on the decree as provided by statute, there is some ground for presuming inability to pay; and I see no reason in such a case,—on the return of the order to show cause why the executor or administrator should not be committed,—if he alleges an inability to pay,—why an investigation should not be immediately had as to the truth of the allegation, instead of first proceeding to imprison him, and then conducting the investigation subsequently. The statute fully recognizes the principle of relief in cases of inability to perform the requirements imposed, and the inquiry may with great propriety be had before instead of after the commitment. The person seeking this privilege must expect to satisfy the Court that he has no means of paying; or if he possesses choses in action and equitable interests not capable of being taken on execution, he should apply them to the payment of the decree. Such would be proper terms of relief in ordinary cases. He should submit also to the usual examination under oath in regard to his property. The other side ought to be allowed to examine witnesses on matters pertinent to the issue of inability, and the proceedings be conducted as was customary with the late Court of Chancery, on creditors' bills. This inquiry may be pursued before me,

or by agreement of parties, before a referee. At its close, the terms upon which the executor may be relieved will be prescribed, dependent of course upon the facts which shall be elicited as to his means and ability to perform the decree.