### IN THE MATTER OF ABRAM E. WATSON.

(SPECIAL TERM, ALBANY COUNTY, JANUARY, 1870.)

It seems, that section 22, subdivision 2 (2 R. S., 563), which denies the right to prosecute the writ of *habeas corpus* in certain cases, distinguishes between an order of commitment for an alleged contempt and a proceeding as for contempt to enforce the rights and remedies of the parties.

And that subdivision 3, section 40 (2 R. S., 567), by which the prisoner is to be remanded if it appear that he is detained in custody "for any contempt specially and plainly charged in the commitment," &c., has no application to proceedings in the latter case.

The Surrogate's Court, not being a court of record, cannot punish as for a criminal contempt, except for interruptions to business during judicial proceedings.

For the same reason, it cannot enforce civil remedies by proceedings as for contempts.

The enforcement, by the Surrogate's Court, of its decrees by attachment must be by process similar to that of the Court of Chancery in analogous cases (2 R. S., 221, § 6, sub. 4), and must be governed by those sections of part 3, chapter 2, title 13 (2 R. S., 534), which are made applicable by section 67 of the act of 1837 (chap. 460), viz., section 16, &c.

Those sections make the filing of interrogatories, and the opportunity to answer, imperative; and the surrogate cannot proceed otherwise.

In cases analogous to the enforcement of a surrogate's decree for the payment of moneys, by attachment the process of the Court of Chancery was in the nature of a *ca. sa.*, and not in the form of a commitment for a contempt; the defendant on the face of the process being entitled, under the former, to the jail liberties, and to be discharged by the insolvent and bankrupt laws, while under the latter he was not entitled to either.

RETURN to a writ of *habeas corpus*. The facts are fully stated in the opinion of the court.

*Matthew Hale* and *J. Forsyth*, for the relator.

*James Lansing*, for the creditors.

LEARNED, J. Abram E. Watson sued out a *habeas corpus*, directed to the sheriff of Rensselaer county, to inquire into the cause of his imprisonment. The sheriff produced the prisoner, and returned that he held him by virtue of a warrant, dated January 12, 1871, signed and sealed by the surrogate of Rensselaer county. The warrant recites an order made by said surrogate, July 6, 1870, that said Watson should be committed to the common jail of Rensselaer county, charged with the contempt mentioned in said order, till he should have paid the fine imposed upon him for his misconduct, amounting to $5,876.50, with interest from December 26, 1867. It commands the sheriff to keep said Watson in the common jail till he shall have paid said fine and interest and sheriff's fees, or until he be discharged by said surrogate or by due course of law.

The sheriff also returns a certified copy of the order of July 6, 1870, made in the matter of the estate of James Scudder, deceased. This order recites an order made December 26, 1867, by which it was decreed that Abram E. Watson, sole surviving executor of said deceased, should pay to George T. Scudder and others $5,876.58; that that sum had been personally demanded of Watson, and he had neglected and refused to pay; that an order was made, February 1, 1868, that an

attachment issue to bring said Watson before said surrogate, on the 20th day of February, 1868, to answer for his misconduct in neglecting and refusing to pay said moneys; that Watson appeared on said day, and an order was made for the continuance of said proceedings on the attachment; that an order was made on the 2d day of May, 1870, requiring said Watson to appear on the 13th of May, 1870, to answer for the aforesaid misconduct; that the further hearing in said matter was adjourned from time to time till said 6th day of July, 1870; that on said day said Watson appeared and admitted his refusal and neglect to pay said moneys, and no satisfactory excuse being made by him therefor, it was ordered and adjudged that he was guilty of this misconduct alleged against him; that said misconduct was calculated to aid, defeat, impede and prejudice the rights and remedies of said George T. Scudder and others; that he pay the aforesaid sum, with the aforesaid interest, which was thereby imposed on him as a fine for his said misconduct and contempt; that he be committed to the jail of Rensselaer county till he pay said fine and sheriff's fees, unless discharged sooner by the surrogate, and that a warrant issue therefor.

On this return the prisoner moved for his discharge.

Much was said on the argument, as to the injustice of the decree against Watson, made December 26th, 1867. His counsel claimed that the money of the testator was all received by the other executor, and none by Watson. Whatever my opinion may be on that question, it is not before me. The only matter for me to pass upon, is the legality of the commitment.

By the provisions of the statute relative to writs of *habeas corpus* (2 R. S., m. p. 567, § 40, sub. 3), the officer is to remand the party, if he is detained in custody for a contempt specially and plainly charged in the commitment, &c.

It might seem at first, that that provision was applicable. But by reference to the previous section 22, subdivision 2, it will be seen that an order of commitment for an alleged contempt is distinguished from proceedings as for contempt to enforce the rights and remedies of the parties.

Actual contempts are provided for by part 3, chapter 3, title 2, article 1, section 10. The distinction is recognized in *People* v. *Spalding* (10 Paige, 284).

This present proceeding belongs to the latter class. It is not taken to punish an actual contempt of court, but it is to enforce the rights of a party by a proceeding *as for* contempt, and, therefore, section 40, subdivision 3, does not apply. And even if it were applicable, no contempt is specially and plainly charged in the commitment.

A Surrogate's Court is not a court of record. (Revised Statutes, part 3, chap. 2, title 1, § 6, sub. 5; Dayton on Surrogates, p. 6; *Doran* v. *Dempsey*, 1 Brad., 490.) Its proceedings are not enrolled. (3 Blk. Comm., 24.) The provisions, therefore, of part 3, chapter 8, title 13, are not applicable to Surrogate's Courts, except that some of the sections are specially made applicable by Laws 1837, chapter 460, section 67. The sections thus made applicable to attachments in Surrogate's Courts, are the 10th, 12th, 13th and 16th, to 32d. It appears to me, therefore, that the authority given by title 13, above mentioned, to punish by fine and imprisonment, does not apply to this case, as that authority is given only to courts of record. (§ 1.) For this reason, I do not think that the case of *People* v. *Coles* (4 Keyes, 46) applies here.

In the present case, the surrogate and the counsel for the creditors, as I understand, assert this doctrine, viz.: That when a decree has been granted by the surrogate, requiring an executor to pay a certain amount of money, and he has failed to pay; then, without regard to his ability or inability to pay, the surrogate has the power to commit him to custody by a process of such a nature, that the prisoner is not entitled to the jail liberties; cannot be discharged by the United States bankrupt law, or the State insolvent act, and can only be released from imprisonment by death, by the payment of the money, or by the discretionary action of the surrogate. It was insisted by the counsel for the creditors, unless I greatly misapprehend, that inability to pay was no excuse on the proceeding before the surrogate; but would be useful

only upon a subsequent appeal by the prisoner to the surrogate's discretion.   This is a very important doctrine if correct, and it should be carefully examined.

The authority possessed by the surrogate is to be found in section 6, subsection 4, of title 1, above mentioned, which authorized him to enforce lawful orders, process, and decrees, by attachments in form similar to those used by the Court of Chancery in analogous cases.

In carrying out the authority thus intrusted to him, the surrogate must strictly follow the directions of the statute. By section 10 of the aforesaid title 13, he is first to issue an attachment directing the penalty in which the defendant is to give a bond.   When the defendant is brought into court, interrogatories must be filed (section 19), to which the defendant shall make written answers.   Proof may be taken, and the court shall then determine whether the defendant has been guilty of the misconduct alleged.   The case of *Brush* v. *Lee* (6 Abb., N. S., 50), where no interrogatories were filed, was a proceeding by order to show cause taken under section 5, which section, as I have above pointed out, is applicable to courts of record, and not to Surrogates' Courts.

The same is true of the case of *The Albany City Bank* v. *Schermerhorn* (9 Paige, 372).   That was a proceeding in a court of record under section 5, above cited.   A remark of the chancellor at page 375 is worthy of notice.   He says that the filing of interrogatories " appears to be absolutely necessary in a proceeding by attachment unless the defendant admits the alleged contempt."   Of the application of this last clause to the present case I shall speak hereafter.   This course of filing interrogatories is recognized in the important case of *Seaman* v. *Duryea* (10 Barb., 523, S. C., 11 N. Y., 324).   And the right of the defendant to be heard in reply to the charge of misconduct, in disobeying the decree, is fully admitted in *Doran* v. *Dempsey* (1 Brad., 490) and *Saltus* v. *Saltus* (2 Lansing, 9).

In the case of *Hosack* v. *Rogers* (11 Paige, 603), the chancellor decided that since the act to abolish imprisonment for

debt, an attachment would not issue on a final decree against an executor. It is true that the language of that act does not reach Surrogates' Courts; but the spirit of the act does, as is acknowledged by the late able surrogate of New York, in *Doran* v. *Dempsey*. The chancellor, however, at page 606, says that the case of a trustee who willfully retains possession of a fund, which was still in his hands and actually under his control, in contempt of the authority of the court, would not be within the non-imprisonment act. And this same idea, viz., that an executor is only to be punished for a willful refusal to pay when he is able, is found in *Doran* v. *Dempsey* and in *Saltus* v. *Saltus*.

It is highly important, therefore, that the defendant should have the privilege granted him by statute, of interrogatories "specifying the facts and circumstances alleged against him, and of an opportunity to answer to the same."

It will be seen by reference to section 1 that the misconduct for which a person can be fined or imprisoned must be such as defeats, impairs, &c., the rights or remedies of a party. Now, since the enactment of a statute authorizing an execution on a surrogate's decree, it would seem to be a harsh construction to hold that mere non-payment of a decree defeated or impaired rights or remedies. Mere non-payment; that is, where the person has not been allowed to show his inability to pay.

There is still another consideration which makes this right still more important.

It is laid down by the chancellor in *The People* v. *Spalding* (10 Paige, 284, affirmed 7 Hill, 301), that when a defendant is ordered to pay a sum of money it becomes a debt, and the precept to commit him is in the nature of a *capias ad satisfaciendum*, and he may be discharged under the insolvent act. But where a fine is imposed for a willful contempt, in violating an injunction, or for other criminal conduct of like nature, he cannot be discharged by insolvent laws or bankrupt law; but is in the same position as if a fine were imposed on a conviction for assault and battery. To the

same effect was *Van Wezel* v. *Van Wezel* (3 Paige, 38). In the case of *The People* v. *Bennett* (4 Paige, 282), the same general principle was laid down, showing that when a party is committed for not paying a sum of money, he is entitled to the jail liberties; but when committed for non-payment of a fine imposed for contempt of court, he must be closely confined. (Chap. 460, Sess. Laws 1847, title 1, art. 1, § 4.) And in that particular case the chancellor points out that inasmuch as the process of commitment did not show that the defendant had been actually convicted and fined for a contempt, and that he was committed for the non-payment of such fine (although the fact was so), therefore the sheriff was not liable for having allowed the defendant the jail liberties.

From this case it appears that when the commitment charges the defendant with a contempt and imposes a fine, he cannot be discharged under the insolvent act, nor is he entitled to the jail liberties.

That is the form of the commitment in the present case. It charges him with a contempt and imposes a fine. If, therefore, this commitment is legal, the defendant, although unable to pay, can never be relieved from close custody except in the discretion of the surrogate under section 20. It is to be observed that the warrant charges the defendant with a contempt and imposes a fine therefor. So far as I can discover, the only authority for a surrogate to punish contempt is to be found in subdivision 6 of section 6, page 222, which applies to the preservation of order in court during a judicial proceeding. I do not think that the right of the surrogate in the present case can be increased by giving the name of *contempt* to the act of the defendant. Those sections of title 13, which are made applicable to Surrogates' Courts, have nothing in them which authorizes the use of the word.

In this present case, although Watson had been attached in 1868, yet the proceeding under which this commitment was issued seems to have commenced by an order made May 2, 1870, requiring him to appear and answer for his misconduct in not paying the aforesaid moneys. Upon this order

he appeared. It is not shown that any interrogatories were filed. He admitted a refusal and neglect to pay the money, but that cannot be considered, in the language of the chancellor, "an admission of the alleged contempt." The language is peremptory. The court *shall* cause interrogatories to be filed, and the defendant *shall* make written answers on oath. It is not enough for the surrogate to say that no satisfactory excuse has been made. The statute prescribes how the accusation and how the excuse shall be made; and the court (at least when its only power is statutory), must follow that course. The surrogate then proceeded to adjudge the defendant to be guilty of the misconduct alleged against him. This misconduct appears to have been a non-payment of the decree; and for this he imposes a fine of the amount of the decree, and imprisons him till it is paid.

Now I have already pointed out that this process is not as it is required to be (2 R. S., m. p. 222, § 6, sub. 4), "in form similar to that used by the Court of Chancery in analogous cases." For the Court of Chancery in the case of a decree for the payment of money, issued a precept in the nature of a *capias ad satisfaciendum*, not a commitment to close custody for an actual contempt, or an actual disobedience. The distinction will be seen at once on examination of the chancery forms, and it is shown in the cases decided by the chancellor, and above cited.

There are many cases in the Supreme Court now, where the defendant may be imprisoned under execution. A recovery of money against a trustee would be one instance. (Code, § 179, sub. 2.) The form of such an execution would be to commit the defendant till he should pay the judgment or be discharged according to law. (Code, § 289, sub. 3.) But on such a recovery no process could issue which should place a defendant in close custody, as he might be placed for violating an injunction. The analogy to the present case seems to me to be strong.

I have not overlooked the case of *Seaman* v. *Duryea;* but it is to be observed that that case was decided on demurrer to

the answer. That by the answer it was alleged that upon the return of an attachment, interrogatories were filed and served, to which the defendant made answers, and thereupon proceedings were had. And on the demurrer, of course, the answer was to be taken as favorably as possible for the defendant.

But it is worthy of remark, that in that very matter the defendant, Seaman, having sued out a *habeas corpus*, and having been remanded by the county judge, was discharged by the judgment of the General Term delivered on certiorari. (New York Legal Observer, vol. 7, page 70.)

By the 23d section (2 R. S., m. p. 538), when the misconduct consists of the omission to perform some act or duty *which it is yet* in the power of the defendant to perform, he shall be imprisoned only until he shall have performed such act or duty, and paid such fine, &c.

Now, the misconduct alleged in the present instance was the omission to pay. It seems to me, therefore, that this section implies that there must be an adjudication that it is in the power of the defendant to pay. And this is a matter which the defendant ought to have had an opportunity to answer on interrogatories. But he had no such opportunity, and no such adjudication was made.

The conclusions to which I have come, are

1st. That the Surrogate's Court not being a court of record, cannot punish as for a criminal contempt, except for interruptions to business during judicial proceedings.

2d. That for the same reason, it cannot enforce civil remedies by proceedings as for contempts.

3d. That the enforcement of decrees by attachment must be by process similar to that of the Court of Chancery in analogous cases, and must be governed by sections 16, &c., above mentioned.

4th. That those sections make the filing of interrogatories, and the opportunity to answer imperative, and that the surrogate cannot proceed otherwise.

5th. That in cases analogous to the present, the process of the Court of Chancery was in the nature of a *ca sa*, and not

in the form of a commitment for a contempt, the defendant on the face of the process being entitled under the former to the jail liberties, and to be discharged by the insolvent and bankrupt laws, which under the latter he was not entitled to either.

6th. That the process against this defendant on the contrary, is in the form of a commitment for a contempt.

7th. That the prisoner must be discharged.