[No. 1718.]

## Ex Parte HEDDEN.

1. WITNESSES—CONSTITUTIONAL PRIVILEGE—WAIVER—EXCEPTIONS. If a witness elects to waive his privilege not to testify against himself, but to disclose his criminal connections, he is not permitted to stop, but must proceed and make a full disclosure.

2. CROSS-EXAMINATION. Under the statute permitting accused persons to testify in their own behalf, they may not defeat cross-examination on their statements on the ground that their testimony might tend to incriminate them.

3. LIMITATION OF CRIME. A witness is not exempt from testifying relative to a crime barred by limitations, though his testimony connects him with the crime.

4. ANSWERS RELATIVE TO DISGRACE AND DISREPUTE. Though the answer of a witness may tend to disgrace him and bring him into disrepute, if the proposed evidence be material to the issue on the trial, he may be compelled to answer, but, if the answer has no effect upon the case, except so far as to impair his credibility, he may invoke his constitutional privilege.

5. IMMUNITY GUARANTEED. Where by statute absolute immunity from prosecution is guaranteed to a witness relative to anything concerning which he may testify, he may be compelled to testify.

6. BOOKS OF CORPORATION, ETC. Where, after the legal custodian of corporation books, etc., and the general superintendent were subpenaed to attend a grand jury investigation of a charge of perjury against the superintendent, the books, etc., were delivered to the superintendent in an attempt to put them beyond the reach of the grand jury's investigation, and were in his possession when both appeared before the grand jury, the court properly compelled him to return the books, etc., to the custodian.

7. POSSESSION REFUSED BY EMPLOYEE, WHEN ILLEGAL. No employee of a corporation obtaining possession of books, etc., belonging to the corporation, surreptitiously or otherwise, when not their legal custodian, and when such books, etc., are not in any sense his private property, may lawfully refuse to produce them, when legally ordered to do so, under the constitutional provision that no person shall be compelled to testify against himself.

8. Contempt—Summary Punishment—Offense Before Grand Jury—Mis-
conduct in Presence of Court. Though a grand jury is an adjunct of
the court, it is not such part thereof as, under Comp. Laws, 3556,
authorizing summary punishment for a contempt in the immediate
presence of the court, permits the judge to summarily punish offenders
for any act before the grand jury, without proceeding on affidavit and
citing the offender to show cause why he should not be punished.

Application for writ of *habeas corpus* by J. F. Hedden.
**Petitioner discharged.**

The facts sufficiently appear in the opinion.

*Campbell, Metson & Brown* and *George S. Green*, for
Petitioner:

I.   Contempt proceedings cannot be used for the purpose
of adjudicating title or right of possession to property.
(Fairell's Crim. Law and Proc. 113; *Ex parte Hollis*, 59
Cal. 405; *Deering* v. *Richardson-Kimball Co.*, 109 Cal. 83;
*Ex parte* Clark, 110 Cal. 407; *Sayers* v. *Superior Court*, 84
Cal. 645; *Tomsky* v. *Superior Court*, 131 Cal. 623; *Ex parte
Casey*, 71 Cal. 269.)   At common law an adverse party could
not be compelled to testify or to produce any evidence in his
possession (Wigmore, sec. 2218, vol. 3).   There is no statu-
tory process to compel the production of documentary evi-
dence except a subpena *duces tecum*.   The order complained
of was not the institution of any new process authorized by
law, and was not an enforcement of the subpena, and was
not, therefore, an order which the court could legally make.
The court appears to have found, though he does not in
terms say so, that Hedden obtained the possession of the
books and documents in question unfairly, unlawfully, and
surreptitiously, and knowing that Mr. Lyon was required
to produce them.   On what evidence did he so find?   The
grand jury did not so find, and, even if they had done so,
an unsworn statement of the foreman would not be com-
petent evidence of a fact which will deprive a citizen of his
liberty.   In cases of contempt, like other criminal cases, the
evidence must establish the contempt beyond a reasonable
doubt.   A mere preponderance is not enough.   (*United
States* v. *Jose*, 63 Fed. 951; *In re Buckley*, 69 Cal. 1; *In re
Judson*, 3 Blatchf. 148; *In re Taylor*, 10 Pac. 88.)

II.   Counsel concedes that petitioner cannot be "compelled in any criminal casè to be a witness against himself." A very generous admission! If counsel knew that to be the law, we cannot understand why this much was conceded to petitioner before he was served as a witness against himself, thus obviating a tedious appeal to this court. Nevertheless, it will only be necessary under this tardy admission to cite the leading authorities on the subject: *Counselman* v. *Hitchcock*, 142 U. S. 547; *Boyd* v. *United States*, 116 U. S. 616; *Brown* v. *Walker*, 161 U. S. 591; *Emery Case*, 107 Mass. 172; *Newgold* v. *American Electric Co.*, 108 Fed. 343; *In re Kanter*, 117 Fed. 357; *McKnight* v. *United States*, 115 Fed. 972; *United States* v. *National Lead Company*, 75 Fed. 94; *Blum* v. *State*, 51 Atl. 26; *Lawson* v. *Boyden*, 43 N. E. 781; *Boyle* v. *Smithman*, 23 Atl. 397; *Ex parte Cohn*, 104 Cal. 524; 1 Wharton, Ev. 3d. ed. par. 536, cases cited.

III.   Section 3557 of the Compiled Laws provides that "when the contempt is not committed in the immediate view and presence of the court a warrant of attachment may be issued to bring the person charged to answer, or without a previous arrest a warrant of commitment may, upon notice or upon an order to show cause, be granted; and no warrant of commitment shall be issued without such previous attachment to answer, or such order or notice to show cause." None of these proceedings appear in the record, and it is conceded that the petition and return contain the whole record of the proceedings of the lower court. The judgment must show on its face the facts upon which the adjudication is made. (*People* v. *Turner*, 1 Cal. 152.) The proceedings must show the jurisdiction of the court and specify the facts upon which the order is based. (*Overend* v. *Superior Court*, 131 Cal. 280; *People* v. *Rowe*, 7 Cal. 183; *Schwartz* v. *Superior Court*, 11 Cal. 112; *Batchelder* v. *Moore*, 42 Cal. 415; *Ex parte Zeehandelaar*, 71 Cal. 238.) The findings should show that it was in the power of the party to comply with the order. (*Ex parte Cohen*, 6 Cal. 318; *Ex parte Silvia*, 123 Cal. 293.)

*A. H. Swallow*, District Attorney of Nye County, and *Mack & Shoup*, for Respondent:

I.   The books and records of the Tonopah and Goldfield

Railroad Company were not the property of petitioner, nor could their contents be suppressed at petitioner's request in order to protect him against the disclosures of transactions that may tend to incriminate him. Petitioner, therefore, testified before the grand jury that he was not the legal custodian of the books, but only temporary custodian, and it appears from Mr. Lyon's testimony that, at the time of the service of the subpena *duces tecum*, he (Mr. Lyon) was in possession of such books, and that, as the auditor of the company, he was entitled to the custody of all such books and documents. The case of *McElree* v *Darlington*, 187 Pa. St. 593, is squarely in point here. In that case the president of a trust company was indicted for securing deposits after the company was insolvent. While the indictment was pending a number of depositors petitioned the court of common pleas for leave to examine the books, papers, and accounts of the corporation to ascertain the condition of the corporation when the deposits to which the indictment related were made. The petition was dismissed by the lower court upon the ground that the examination proposed would constitute an infringement or denial of the rights of the person indicted. The ruling was reversed on appeal. The foregoing distinction emphasizes the distinction that exists between the cases in which the documents sought to be produced are the private property and rightfully in the possession of the person by whom their production is sought to be compelled and the cases in which the documents are the property and in the possession of another. There can, therefore, be no question but that the service of a subpena *duces tecum* upon Lyon requiring the latter to produce certain records of the railroad company was not in violation of petitioner's rights, and that petitioner had no right to ask Lyon or the company to suppress such documents or refuse to produce them, and his position is none the better because he has, in violation of the process of the court, suppressed such documents himself.

II. Witnesses before a grand jury are under control of the court in the same manner and to the same extent as are witnesses before a trial jury. (17 Am. & Eng. Ency. Law, 2d ed. 1289; *In re Gannon*, 69 Cal. 541; *Heard* v. *Pierce*, 8 Cush. 338, 54 Am. Dec. 757; *Ward* v. *State*, 2 Mo. 126, 22 Am.

Dec. 449.) Even though the refusal of the petitioner before the grand jury to permit Lyon to obey the process of the court was not a contempt in the presence of the court, his subsequent refusal, through his counsel, to recognize the validity of such process, or to permit a compliance with it, was certainly a contempt committed in the immediate presence of the court. (Thompson on Trials, 138, and cases cited; Bishop on Cr. Proc. 868.)

*Campbell, Metson & Brown* and *George S. Green,* for Petitioner, in reply:

I. Counsel say that only Lyon can make objection to the validity of the process. We have to observe here that we are not trying Lyon's case. All objections to the sufficiency of the proceedings are made on behalf of petitioner. We have the right, however, to look into the record to determine whether the court had jurisdiction to make the order made, and, unless we may go behind the order, it cannot appear that the court had the semblance of jurisdiction over the parties or the subject-matter. The case of *McElree* v. *Darlington,* 187 Pa. St. 543, for which much is claimed by counsel, is not at all in point. Though it may be said to tread close to forbidden ground, yet in that case the books were in the hands of a receiver and were not in the possession of the defendant, and he was required to produce them in evidence on a charge prosecuted against himself.

By the Court, SWEENEY, J.:

A writ of *habeas corpus* was issued and made returnable before this court upon a petition filed and presented by George S. Green in behalf of J. F. Hedden, alleging that said Hedden was unlawfully imprisoned and restrained of his liberty at Hawthorne, Esmeralda County, Nevada, by the sheriff of said county and state. There appears from the petition and return of the sheriff to said writ the following facts and proceedings: On February 26, 1907, the district attorney of Esmeralda County, Nevada, issued a subpena *duces tecum* directed to the said J. F. Hedden and one A. J. Lyon, commanding them to appear and attend before the

grand jury of Esmeralda County, Nevada, at Hawthorne, in said county and state, on the 19th day of March, 1907, at the hour of 10 a. m., there to testify in the case of *The State of Nevada* v. *J. F. Hedden*, and also commanding them to produce before the grand jury "the ledger of the Tonopah and Goldfield Railroad Company for the year 1906; and the record of vouchers audited and issued for the year 1906, and copy of Interstate Commerce Report for the years 1905 and 1906, monthly reports made to the board of directors or other officers of the company for each and every month during the years 1905 and 1906, and all other books and papers of the Tonopah and Goldfield Railroad Company, showing the cash on hand or in bank each month during the year 1906, also all other papers showing any and all of the properties of the Tonopah and Goldfield Railroad Company situated in the County of Esmeralda, State of Nevada, during the year 1906." The desired witnesses, Hedden and Lyon, both being residents of a different district than that of the said grand jury, it became necessary under Comp. Laws, 4511, in order to secure their attendance and render effective the subpena issued by the district attorney, that the district judge should find certain jurisdictional facts. In accordance with this section the district attorney filed an affidavit, on which the court made the following order: "State of Nevada, County of Esmeralda—ss.: It appearing to my satisfaction from the affidavit of A. H. Swallow, District Attorney of Esmeralda County, Nevada, that J. F. Hedden and A. J. Lyon are witnesses material to the state in the case of *The State of Nevada* v. *J. F. Hedden*, and that the evidence of said A. J. Lyon and J. F. Hedden is material and will be necessary on the part of the state in the investigation of the charge of perjury against J. F. Hedden to be investigated by the grand jury of Esmeralda County, on the 19th day of March, 1907, at the hour of 10 o'clock of said day, it is therefore ordered, adjudged, and decreed that A. J. Lyon and J. F. Hedden be, and they are required to attend as witnesses before the grand jury of Esmeralda County on the 19th day of March, 1907, at the hour of 10 o'clock a. m., at the Town of Hawthorne, in the County of Esmeralda, State of Nevada. Frank P. Langan,

District Judge. Dated February 26, 1907." The sheriff of Nye County made the following return on the said subpena and order of attendance: "Sheriff's Office, County of Nye—ss.: I, J. J. Owen, Sheriff of the County of Nye, hereby certify that I served the within subpena by showing the said within original to each of the following persons named therein, and delivering a copy thereof to each of said persons personally on the 4th day of March, A. D. 1907, in the County of Nye, in Tonopah, Nevada. J. J. Owen, Sheriff, by George B. Swasey, Deputy Sheriff."

On March 25, 1907, the grand jury of Esmeralda County, Nevada, submitted to the district court of said county and state the following partial report: "Hawthorne, Nevada, March 25, 1907. To the Hon. F. P. Langan, District Judge of the District Court of the First Judicial District of the State of Nevada, Esmeralda County, Presiding: The grand jury of Esmeralda County hereby submits to the above honorable court a partial report of the proceedings and action of the grand jury in the case of *The State of Nevada* v. *J. F. Hedden*, on a charge of perjury. That in investigating said charge one A. J. Lyon was regularly subpenaed to appear before the grand jury to testify in the above-entitled case, and was ordered and commanded by said subpena to produce before the said grand jury the ledger of the Tonopah and Goldfield Railroad Company for the year 1906, the record of vouchers audited and issued for the year 1906, the record of operating expenses for the year 1906, a copy of the Interstate Commerce Report for the years 1905 and 1906, monthly reports made to the board of directors or other officers of the company for each and every month during the years 1905 and 1906; and all other books and papers of the Tonopah and Goldfield Railroad Company, showing cash on hand and in bank each month during the year 1906, and also all other papers showing any and all of the properties of the Tonopah and Goldfield Railroad Company situated in the County of Esmeralda, State of Nevada, during the year 1906. That in response to said subpena issued by A. H. Swallow, District Attorney of Esmeralda County, State of Nevada, said subpena being hereby referred to and made part of this report,

said A. J. Lyon appeared before the grand jury and was duly sworn by its foreman, A. Summerfield, to tell the truth, the whole truth, and nothing but the truth, in the said case of The State of Nevada against J. F. Hedden. That said A. J. Lyon testified that, when said subpena was served upon him by the sheriff of Nye County, he was the auditor of the Tonopah and Goldfield Railroad Company, and had charge and possession of the foregoing named books of the said company. That some time after the service of said subpena, namely, on the 18th day of March, 1907, he received a telegram from George S. Green, which telegram is as follows, to wit: 'Carson Nevada, March 18, 1907. A. J. Lyon, Audr. T. and G. R. R., Tonopah. Hedden has been requested to bring company's books before grand jury. As general counsel and under instructions from Brock, I order you to turn all books of Tonopah and Goldfield Railroad Company over to Hedden. Geo. S. Green.' That in obedience to said telegram, he turned over said books to said J. F. Hedden on said 18th day of March, 1907, and the reason that he did not produce the books at this time was because he had surrendered possession of them to Mr. Hedden, and did not know where they were. He further testified that, if the books were in his possession now, that he would produce them before the grand jury. Whereupon the grand jury ordered said A. J. Lyon to produce said books before the grand jury. Mr. Lyon replied that he could not do so, as it was impossible, as he did not have possession of them. J. F. Hedden was then called before the grand jury, and, on being duly sworn, said: 'I am the general superintendent of the Tonopah and Goldfield Railroad Company. I refuse to answer when I received the books from A. J. Lyon, for the reason of my constitutional right to refuse to testify against myself, and for the further reason that the answers might tend to incriminate myself as well as the company. I am not the secretary of the company, who is the legal custodian of the books, and am only temporary custodian, and I refuse to answer all questions on that ground.' Whereupon the grand jury ordered said J. F. Hedden to return the books to A. J. Lyon. Said J. F. Hedden then

refused to turn over said books to said A. J. Lyon, whereupon the grand jury ordered said J. F. Hedden to produce said books before this grand jury. Said J. F. Hedden declined to comply with said order for the reasons stated. It appears to the grand jury, from evidence submitted, that said J. F. Hedden filed with the county assessor of Esmeralda County a statement of the properties owned by the Tonopah and Goldfield Railroad Company situated in Esmeralda County, State of Nevada; that the same was sworn to by said J. F. Hedden as being true and correct; that said affidavits to said statement were made before a notary public by said J. F. Hedden, signed and sworn to by him before said notary public on the 10th and 22d days of September, 1906. That the grand jury is informed, and on such information verily believes, that said J. F. Hedden as superintendent of the Tonopah and Goldfield Railroad Company, situated in Esmeralda County, Nevada, has failed to set forth said property in said tax statement sworn to by him. It is necessary for the grand jury to have said books to complete the investigation of the charge of perjury against said J. F. Hedden, as the grand jury is informed and believes that the information as to what property was omitted from said tax statement by said J. F. Hedden can only be obtained from said books, papers, and documents set forth in said subpena. We therefore respectfully ask the court to compel said witnesses to produce said books before this grand jury. A. Summerfield, Foreman."

After citing the salient facts and matters as set forth in the partial report of the grand jury and reviewing the legal phases of the situation presented, the court in its opinion premising the order, on account of which petitioner complains he is deprived of his liberty, made the following in the nature of findings of fact: "Mr. Lyon on March 4, 1907, was under a subpena *duces tecum* to produce to the grand jury of Esmeralda County on the 19th day of March, 1907, the books and papers which he on said March 4, 1907, had in his possession and which by said subpena he was required to produce, said books and papers being the property of the

Tonopah and Goldfield Railroad Company. It appears to the court that these books and papers were in the possession of Mr. Lyon for fourteen days after March 4, 1907, the day of the service on him of said *duces tecum* process. In the case of Mr. J. F. Hedden, he came by the possession of the books and papers unfairly and in the face of the fact that he knew that Mr. Lyon, a lawfully constituted officer of the company, in whose possession they were on March 4, 1907, was under subpena to produce the same to the grand jury of Esmeralda County on March 19, 1907." Concluding, the court made the following order, which petitioner maintains illegally restrains him of his liberty: "From the foregoing I therefore find A. J. Lyon guilty of contempt of court, in that he failed to produce to the grand jury of Esmeralda County the books and papers of the Tonopah and Goldfield Railroad Company required to be produced by the said subpena *duces tecum* lawfully issued by the district attorney of Esmeralda County on the 26th day of February, 1907, and duly served on said A. J. Lyon on the 4th day of March, A. D. 1907, in Nye County, Nevada, and which said books were in the possession of said A. J. Lyon on March 4, 1907. I further order that J. F. Hedden forthwith turn over to and place in the possession of said A. J. Lyon all the books and papers of the Tonopah and Goldfield Railroad Company which the said Hedden received from A. J. Lyon on the 18th day of March, 1907, and that said J. F. Hedden be committed to the custody of the sheriff of Esmeralda County until he complies with this order." Preliminary to the argument of this case on its merits, counsel for the petitioner excepted to the sufficiency of the return, and moved to strike out certain portions thereof as being improper and constituting no legal part of the return. We are of the opinion that, in so far as the objection applies to those portions of the return wherein the sheriff on information and belief alleges certain matters immaterial and foreign to this proceeding and casting aspersion and accusation on opposing counsel and petitioner, the objection is sustained; but, in so far as the objection applies to any part of the findings or judgment of the lower court, or to the documents of

record in the lower court referred to or made a part of the return on which said judgment was based or referred to, the same is overruled.

In a very able presentation of this case by respective counsel, orally and by brief, two main questions are submitted to this court for consideration, wherein is involved the jurisdiction of the lower court to have made the order committing J. F. Hedden into the custody of the sheriff until such time as he complied with said order commanding him to forthwith deliver to A. J. Lyon the books and papers called for in the subpena *duces tecum*. It is contended by petitioner, first, that the order of the lower court commanding him to turn over the books and papers in question to Lyon is void, because in effect it would be compelling him to become a witness against himself in a criminal proceeding against him then under investigation by the grand jury, and would therefore be in violation of his constitutional rights guaranteed him by both the Constitution of the United States and of the State of Nevada. Secondly, that the proceedings in which the order culminated committing Hedden into custody were not in accord with the mode required by law and that said order is therefore void. The maxim, "*Nemo teneter se ipsum accusare*," is derived from the common law, and was reaffirmed in Magna Charta, whence it was transferred, in slightly varied form, into the Constitution of the United States where we find it thus expressed in the fifth amendment: "That no person  *  *  *  shall be compelled in any criminal case to be a witness against himself." And verbatim in section 8 of article I of the Constitution of Nevada this same provision exists. This wise provision protecting the citizen in his personal liberty in this respect, as expressed in the celebrated case of *Brown* v. *Walker*, 161 U. S. 596, 16 Sup. Ct. 640, 40 L. Ed. 819, had its origin in a protest against the inquisitorial and manifestly unjust methods of interrogating accused persons which long obtained in the continental system, until the expulsion of the Stuarts from the British throne in 1688. The abuse of the right to interrogate persons accused of crime, the temptation to press the witness unduly to wring confessions from him under torturous or painful methods, to force him

into a corner, to entrap him into fatal contradictions, and other unfair advantages which were frequently taken by officers of the crown, made the system so odious in England as to give rise to the demand for its total abolition. So deeply did the iniquities of the ancient system impress themselves upon the minds of the American colonists that the states with one accord made a denial of the right to oppress accused persons a part of their fundamental law, so that this maxim, which in England was a mere rule of evidence, became clothed in this country with the impregnability of a constitutional enactment; and indelibly recognized judicially since the rendition of the famous opinion of the United States Supreme Court in the case of *Boyd* v. *United States*, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, holding that the fourth amendment to the Federal Constitution, which provides, among other things, "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated," and which provision we find also verbatim in our own constitution, as being a complement to the fifth amendment, and holding that a compulsory production of a party's private books and papers to be used against himself or his property in a criminal or penal proceeding is within the spirit of the amendment and equivalent to a compulsory production of papers in the sense implied in that part of the fifth amendment which declares that no person shall be compelled in any criminal case to be a witness against himself. With the authorities above cited, the proposition is too well settled to need a further citation of authorities that a witness cannot only not be compelled to testify against himself in a criminal case, but that this exemption extends also to his private books and papers, a proposition which counsel for respondent concedes, but which they claim affords the petitioner no justification in the present case.

Meritorious and stringent as this general rule is, there are, however, certain classes of cases which have always been treated as exceptions, because not falling within the reason of the rule. When examined, these cases will all be found to be based upon the idea that if the testimony sought can-

not possibly be used as a basis for, or in aid of, a criminal prosecution against the witness, the rule ceases to apply; its object being to protect the witness and no one else, much less that it shall be made use of as a pretext for securing immunity to others. Thus, if the witness elects to waive his privilege, as he may doubtless do, since the privilege is for his protection and not for that of other parties, and discloses his criminal connections, he is not permitted to stop but must go on and make a full disclosure. (1 Greenleaf on Evidence, 451; *Commonwealth* v. *Pratt*, 126 Mass. 462; *Lockett* v. *State*, 63 Ala. 5; *Low* v. *Mitchell*, 18 Me. 372; *People* v. *Freshour*, 55 Cal. 375.)

So, under modern statutes permitting accused persons to take the stand in their own behalf, they may be subjected to cross-examination upon their statements. (*State* v. *Whitam*, 72 Me. 531; *Commonwealth* v. *Morgan*, 107 Mass. 199; *People* v. *Casey*, 72 N. Y. 393; *State* v. *Cohn*, 9 Nev. 179.)

For the same reason, if the prosecution for a crime concerning which the witness is interrogated is barred by the statute of limitations, he may be compelled to answer. (*Manhanke* v. *Cleland*, 76 Iowa, 401, 41 N. W. 53; *Weldon* v. *Burch*, 12 Ill. 374; *Floyd* v. *State*, 7 Tex. 215; *Calhoun* v. *Thompson*, 56 Ala. 166, 28 Am. Rep. 754.) Again, if the answer of the witness may have a tendency to disgrace him and bring him into disrepute, and the proposed evidence be material to the issue on trial, the great weight of authority is that he may be compelled to answer, although, if the answer have no effect upon the case, except so far as to impair the credibility of the witness, he may fall back upon his privilege. (1 Greenleaf on Evidence, 454, 455; *Weldon* v. *Burch*, 12 Ill. 374; *Ex parte Rowe*, 7 Cal. 184.) So, also, where by statute absolute immunity from prosecution is guaranteed to the witness in regard to anything he may testify concerning, he may be compelled to testify. (*Brown* v. *Walker*, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819; *Counselman* v. *Hitchcock*, 142 U. S. 548, 12 Sup. Ct. 195, 35 L. Ed. 1110.) In view of the facts and proceedings in this case, we believe another well-defined line of exception can be well taken to the general rule, which we will hereafter cite.

Subsequent to the oral argument and filing of briefs in this proceeding, counsel for petitioner, with the consent of opposing counsel, filed for the consideration of this court a copy of an opinion recently rendered in the Circuit Court of the United States for the District of Idaho in the matter of the application of L. G. Chapman for a writ of *habeas corpus*. The opinion is by Gilbert, Presiding Justice of the United States Circuit Court of Appeals for the Ninth Circuit, and counsel for petitioner in calling our attention to this opinion contends that it involves "identically the same questions presented in the case now under consideration." The Chapman case has some points of resemblance to, but we think may be clearly distinguished from, the case of the petitioner Hedden. Chapman was adjudicated guilty of contempt for refusing to obey the order of the court to submit to the inspection of the United States grand jury for the District of Idaho the books and papers of the Barber Lumber Company, and was ordered confined in the jail until he should comply with the order of the court in the premises. The matter under investigation by the federal grand jury was the charge of unlawfully acquiring timber lands by the said Barber Lumber Company, of which Chapman was the general manager and a stockholder.

After citing at length the facts presented in the case, Judge Gilbert in his opinion said: "While the proceedings began with a subpena *duces tecum* directing the petitioner to bring before the grand jury the books and records of the Barber Lumber Company, they finally resulted in an ultimatum from the court ordering him to produce the books and papers and submit them to the inspection of the grand jury, and giving the grand jury the authority, which was expressly denied to the petitioner, to determine what was pertinent and what was not pertinent to the subject which was under consideration. That subject had been announced in open court to be the investigation of the proceedings whereby the Barber Lumber Company had acquired title to timber lands of the United States in the State of Idaho. It was not disputed that the Barber Lumber Company was incorporated without the State of Idaho, and that the petitioner was and from the first had been the manager of its

business in the State of Idaho. It followed from this that the acquisition of title to timber lands must have been conducted on behalf of the corporation by the petitioner, and that everything that was done in that connection was done with his knowledge and under his direction. If, therefore, there was criminal violation of law in acquiring those lands, there is every reason to assume that the petitioner must necessarily have been implicated therein, and that an inspection of the books would furnish evidence against him. That was one of the grounds of his appeal to the protection afforded by the fifth amendment and his refusal to comply with the order of the court. The fifth amendment, which provides that one may not be compelled in a criminal case to be a witness against himself, is closely allied with the fourth amendment, which inhibits unreasonable searches and seizures. Said the court, in *Boyd* v. *United States*, 116 U. S. 616–633, 6 Sup. Ct. 524, 534, 29 L. Ed. 746: 'We have been unable to perceive that the seizure of a man's *private books and papers to be used in evidence against him* is substantially different from compelling him to be a witness against himself. We think it is within the clear intent and meaning of those terms.' On page 631 of 116 U. S., page 533 of 6 Sup. Ct. (29 L. Ed. 746), the court added: 'And any compulsory discovery by extorting the party's oath or compelling the production of his private books and papers to convict him of crime, or to forfeit his property, is contrary to the principles of a free government.' Elsewhere in the opinion the court said: 'It is our opinion, therefore, that a compulsory production of a man's private papers to establish a criminal charge against him or to forfeit his property is within the scope of the fourth amendment to the constitution in all cases in which a search and seizure would be, because it is a material ingredient and effects the sole object and purpose of search and seizure.' But it is said that, while one may not be compelled in a criminal case to produce his own books and records if they tend to criminate him, he can claim no protection under either the fourth or the fifth amendment when, as here, he is called upon to produce, not his own books, but the books of a corporation of which he

is an officer.   In support of that view, reference is made to
*McAlister* v. *Henkel*, 201 U. S. 90, 26 Sup. Ct. 385, 50 L. Ed.
671, in which the court said:  'Indeed, the authorities are
numerous to the effect that an officer of a corporation cannot
set up the privilege of a corporation as against his testimony
or the production of their books.  But here the petitioner is
not setting up the privilege of the corporation as against the
production of its books.   He is asserting his own privilege
for his own benefit on the ground that the books of the cor-
poration of which he is the custodian will tend to incrimi-
nate him.'   *   *   *   The reasons why a witness may not be
required to answer a question which he claims may tend
to incriminate him apply with added force to a case where
he is ordered to subject to the inspection of a grand jury
books and papers which contain the record of his connection
with transactions which are alleged to be criminal in their
nature.   In the present case, it is not perceivable that there
can be any question of the good faith of the petitioner in
declining to subject the books to examination.   Although
they are in fact the books of the corporation, they are never-
theless to all intent and purpose his own books.   They are
records made by him or under his direction, and are in his
charge and control.   They refer to transactions which he has
conducted.   If they show the method in which the corpora-
tion acquired title to timber lands, they necessarily disclose
his own acts.   It is not denied that the presentation of the
books and their inspection by the grand jury is desired for
one purpose only.   This is fully shown by the record of the
proceedings before the court.   It is that they be resorted to
to ascertain what individual or individuals may be subject
to indictment for violation of the laws of the United States
in acquiring title to timber lands.   I think it very clear that
if the books contain the evidence thus sought, tending to
prove the violation of law, there was reasonable ground for
concluding that they might have tended to incriminate the
petitioner, and that, therefore, his plea of privilege should
have been sustained."

In the case of petitioner Hedden it cannot be said that
the corporate books and papers in his possession are to all

intents and purposes his own books, that they are records
made by him or under his direction, or that they were ever
in his charge or control prior to the day before he and Mr.
Lyon were required to appear before the grand jury. In
fact, it appears that the petitioner himself at the time he
appeared before the grand jury regarded the secretary of the
company, Mr. Lyon, as he himself. testified before the grand
jury, as the "legal custodian of the books," and himself
"only temporary custodian." Had the books, documents,
papers, etc., been permitted to remain in the possession of
Mr. Lyon, the officer in whose control they naturally belonged
and in whose possession they were at the time of the service
of the process, we conceive of no objection which the peti-
tioner Hedden could have urged which would have kept
them from the grand jury, and particularly in view of the
telegram of George S. Green, general counsel of the Tono-
pah and Goldfield Railroad Company, to Lyon, to wit:
"Carson, Nevada, March 18, 1907. A. J. Lyon, Auditor
Tonopah and Goldfield R. R., Tonopah, Nevada. Hedden
has been requested to bring company's books before grand
jury. As general counsel and under instructions from
Brock I order you to turn all books of Tonopah and
Goldfield Railroad Company over to Hedden. [Signed]
Geo. S. Green"—indicating that the company either had
no objection to the books being produced before the grand
jury, or, if we were to construe the telegram otherwise,
intended obstructing the process of the court. If the com-
pany had no objection to the producing of the books before
the grand jury, certainly Hedden, who was not the legal cus-
todian of the books at the time of the service of the subpena
on Lyon, and not being his private property, no matter how he
came into possession of them under the circumstances, would
not be privileged to withhold them from the grand jury
because of any personal constitutional privilege of his own.
It is claimed, however, because of the mere fact that they
were in his possession at the time he appeared before, and
they were demanded by, the grand jury, he could take refuge
under his constitutional right not to be a witness against
himself, and that the books also could not be taken from him

or returned to the possession of the rightful custodian, because that, in effect, would be compelling him to become a witness against himself. In considering this contention we deem it entirely proper to take into consideration how the petitioner came into the possession of the documentary evidence in question. When the subpena was served on Hedden and Lyon, the latter had possession of and was the natural and proper custodian of the books, papers, and documents required by the subpena to be produced. It was Lyon's duty to produce before the grand jury what the subpena called for, and if he failed, without good reason, so to produce them, he became liable to be punished for a contempt of court.

But it is claimed in this case that Hedden was equally bound to obey all the commands of the subpena because he was named in it first, and it was first served on him. In fact, it is repeatedly urged that Hedden, instead of obstructing the due administration of justice, has obeyed explicitly the process of the court, and has only exercised his constitutional privilege of refusing to become a witness against himself. The subpenaing of Hedden as a witness in a criminal investigation against himself certainly imposed no duty or obligation on his part to produce before the grand jury books, documents, or papers, etc., which were not, nor never have been, in his possession or control, and which at the time he knew were and had been in the control and custody of another who was regularly subpenaed to produce them. The trial court evidently concluded that the transfer of the possession of the documentary evidence in question from the custody of Lyon to that of Hedden the day before the grand jury met, as found by Judge Langan, was for the purpose of putting it, if possible, out of the reach of the grand jury's investigation, and under the circumstances we are of the opinion that the lower court properly proceeded in so far as the order is concerned requiring the petitioner to return to Lyon the books, papers, and documents mentioned in the subpena and which were by said Lyon turned over to Hedden on the 18th day of March, 1907, the day preceding the meeting of the grand jury.

The contention that the order is too broad, in that it calls

for more than is necessary, or subjects the business of the corporation to undue inspection or investigation, or that the order complained of or process of the court is being used for or prompted by improper motives by the prosecution in order to fish for evidence in a case other than the one under consideration, is not at this time a matter for consideration. When the proper custodian of the corporation's books and papers, etc., is called upon to produce them before the grand jury, if the privilege is claimed at the proper time, in the proper manner, it is presumed that the court will define just what parts or portions of the books or papers subpenaed are subject to inspection or investigation. But this and other privileges which might be urged by the corporation, through its proper officer, before submitting its books and papers called for in the subpena *duces tecum* to be produced for the inspection of the grand jury, does not afford petitioner any relief in claiming any personal exemption, upon the ground that the production of such books and papers would be compelling him to give evidence or become a witness against himself. And, in addition to the classes of cases heretofore cited, which are recognized as exceptions to the general rule that no person in a criminal case shall be compelled to become a witness against himself, we are of the opinion that the facts and proceedings in this case warrant us in adding that no employee of a corporation who may obtain the possession of the books or papers belonging to a corporation, surreptitiously or otherwise, when not the legal custodian of such books or papers, and when such books or papers are not in any sense his private property, can lawfully refuse to produce them when legally ordered to do so.

In further support of our view of the matter that petitioner would not be privileged to withhold or suppress the books and papers in question as evidence before the grand jury upon the ground that it would be compelling him to become a witness against himself, we cite *McElree* v. *Darlington*, 187 Pa. St. 593, 41 Atl. 456, 67 Am. St. Rep. 592; *In re Moser*, 138 Mich. 302, 101 N. W. 588; *McAlister* v. *Henkle*, 201 U. S. 90, 26 Sup. Ct. 385, 50 L. Ed. 671.

Before judgment is passed upon a defendant, either depriv-

ing him of his liberty or of his property, he unquestionably ought to have the right to be present and to be heard. Nowhere does it appear, either from the petition or the return upon the writ, nor anywhere in the record of this case, that the court upon affidavit filed ever cited Hedden to appear before the court to show cause why he should not be punished for contempt, or that the district judge had anything before him at the time of making the order complained of other than the partial unsworn report made by the foreman of the grand jury, though from the opinion and order made we may conclude that an argument was made by respective counsel before the court. The court below in entering the order complained of was evidently of the opinion, and counsel for respondent attempt to maintain the court's position, that it was not necessary before entering the order of commitment to have before him the facts constituting the alleged offense committed in affidavit form as prescribed by our statute, nor a citation to defendant to show cause why he should not be punished for contempt before making such order, because having acquired jurisdiction of Hedden and Lyon by the subpena *duces tecum* previously issued and served, and the grand jury being a part of the court, the refusal to produce the books and papers to the grand jury, the offense was as though committed in the immediate view and presence of the court, and that, in failing to comply with the order contained in the subpena to produce said books and papers to the grand jury, they could be punished summarily and until the order of the court was fully complied with. Section 3555 of our Compiled Laws particularly defines what acts or omissions shall be deemed contempt, and section 3556 provides when a contempt may be punished summarily, and, in view of its important bearing on the determination of whether the court proceeded regularly, we quote these sections:

"3555. Sec. 460. The following acts or omissions shall be deemed contempts: First—Disorderly, contemptuous, or insolent behavior towards the judge whilst holding court, or engaged in his judicial duties at chambers, or towards referees or arbitrators, while sitting on a reference or arbitra-

tion, or other judicial proceeding. Second—A breach of the peace, boisterous conduct, or violent disturbance in the presence of the court, or in its immediate vicinity, tending to interrupt the due course of a trial, or other judicial proceeding. Third—Disobedience or resistance to any lawful writ, order, rule, or process issued by the court or judge at chambers. Fourth—Disobedience of a subpena duly served, or refusing to be sworn or answer as a witness. Fifth—Rescuing any person or property in the custody of an officer by virtue of an order or process of such court or judge at chambers. Sixth—Disobedience to the order or direction of the court made pending the trial of an action, in speaking to or in the presence of a juror concerning an action in which such juror has been impaneled to determine, or in any manner approaching or interfering with such juror, with the intent to influence his verdict.

"3556. Sec. 461. When a contempt is committed in the immediate view and presence of the court or judge at chambers, it may be punished summarily, for which an order shall be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein described. When the contempt is not committed in the immediate view of the court or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators.

"3557. Sec. 462. When the contempt is not committed in the immediate view and presence of the court or judge, a warrant of attachment may be issued to bring the person charged to answer, or without a previous arrest a warrant of commitment may, upon notice, or upon an order to show cause, be granted; and no warrant of commitment shall be issued without such previous attachment to answer, or such notice or order to show cause."

The question as to whether or not the court had the authority at the time it entered the order complained of, and whether or not the order or any part thereof is void, because of having improperly proceeded, as we view the case, practically

resolves itself into the construction we place upon the statutes above quoted, and as to whether or not the grand jury can be so considered a part of the court as to have warranted the court in acting summarily and without citing petitioner to show cause why he should not be punished before entering said order committing him into the custody of the 'sheriff. From a careful perusal of the authorities, we have examined in the light of our statutes defining contempt and the mode of procedure of adjudging same; and keeping in mind the decisions of this court which hold that statutes relating to contempts and the procedure of punishing same must be strictly construed (*Maxwell* v. *Rives*, 11 Nev. 213; *Ex parte Sweeney*, 18 Nev. 74, 1 Pac. 379), we are of the opinion that, while a grand jury when in session and in attendance on business connected with the court is an adjunct or appendage of the court, yet it is not in legal contemplation such a part of the court as is contemplated in section 3556 as would authorize a judge to summarily punish an offending party for any act before it, without proceeding on affidavit and citing such party to show cause why he should not be punished as it would be authorized to do if the contempt was committed "in the immediate view and presence of the court."

It has been declared without qualification by the Supreme Court of the United States in the case of *New Orleans* v. *Steamship Co.*, 20 Wall. 387, 22 L. Ed. 354, that a "contempt of court is a specific criminal offense," and that the judgment therein is a judgment in a criminal case; and numerous cases may be found containing unqualified declarations of similar import.    There is, however, a line of authorities which indicate that contempt proceedings are civil and not criminal, but, while the apparent conflict of views cannot in all cases be reconciled, much of the inconsistency disappears if contempts be regarded as civil or criminal according to their nature and effect.    This distinction is substantially recognized by Sir William Blackstone in his famous work.    See 4 Blackstone's Commentaries, c. 20.

Mr. Rapalje, in his work on Contempts, at section 21, gives the best general definitions relating thereto we have found. He says: "Civil contempts are those *quasi* contempts which

consist in failing to do something which the contemner is ordered by the court to do for the benefit or advantage of another party to the proceeding before the court, while criminal contempts are all those acts in disrespect of the court or its process, or which obstruct the administration of justice, or tend to bring the court into disrepute. To the former class of contempts belong such acts as the disobedience of an injunction issued at the suit of a private party. Incidentally the court may vindicate its authority, but the individual alone is interested in the enforcement of the order, and usually institutes the contempt proceeding. Formerly the process whereby courts of chancery enforced all their decrees was in form and name an attachment for contempt. To the latter class of contempts belong such acts as misconduct by attorneys or other officers, disobedience of subpenas or other process, disturbance or insolent behavior in the presence or immediate vicinity of the court, and the like." (*Phillips* v. *Walsh*, 11 Nev. 178; *Welch* v. *Barber*, 52 Conn. 147, 52 Am. Rep. 567; *Crook* v. *People*, 16 Ill. 534; *Ex parte Hardy*, 68 Ala. 303; *In re Watson*, 3 Lans. 408; *Hawley* v. *Bennett*, 4 Paige, 163; *Wyatt* v. *People*, 17 Colo. 252, 28 Pac. 961.)

But, irrespective of whether or not the proceedings prior to a judgment in a contempt case be civil or criminal, we believe that unless the contempt is committed in the immediate view and presence of the court, and when we say immediate view and presence of the court we mean in the ocular view of the court, or where the court has direct knowledge of the contempt, that the rights of every defendant should be protected as evidently designed by the authors of our statute when they provided that, when the contempt is not in the immediate view and presence of the court, the charge should be made by affidavit and the contemner given the right to show cause why he should not be punished for contempt, and prove or disprove the charges against him before judgment be passed upon him. This right to defend one's self, either civilly or criminally, in any action which may be instituted wherein his liberty or property is involved, is the sacred privilege of every citizen and of such trans-

cendent importance that it cannot be taken from him even by legislative enactment. In the present case the proceedings disclose that the court failed to act in accordance with the mode required by law in ordering petitioner into custody, and, in so doing, we believe acted without authority of law, and in violation of the rights of petitioner.

The order therefore committing petitioner into the custody of the sheriff is void, and he is ordered released forthwith.